1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8

JEREMY ROD UTZ,

Plaintiff,

No.  2:16-CV-00198-RHW

9

v.

10
11
12

NANCY A. BERRYHILL
(PREVIOUSLY CAROLYN W.
COLVIN), Acting Commissioner of
Social Security,[1]

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

13

Defendant.

14        Before the Court are the parties' cross-motions for summary judgment, ECF

15   Nos. 13 & 14. Mr. Utz brings this action seeking judicial review, pursuant to 42

16   U.S.C. § 405(g), of the Commissioner's final decision, which denied his

17   application for Disability Insurance Benefits and Supplemental Security Income

18   under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-

19

20   [1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the
defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

1383F. After reviewing the administrative record and briefs filed by the parties, the

Court is now fully informed. For the reasons set forth below, the Court **GRANTS**

Defendant's Motion for Summary Judgment and **DENIES** Mr. Utz's Motion for

Summary Judgment.

## I.     Jurisdiction

Mr. Utz filed for Disability Insurance Benefits and Supplemental Security

Income on July 12, 2012. AR 12, 71, 79, 200, 206. His alleged onset date is June

28, 2012. AR 12, 200, 206. Mr. Utz's application was initially denied on October

26, 2012, AR 110-12, and on reconsideration on January 29, 2013, AR 119-23.

A hearing with Administrative Law Judge ("ALJ") Lori L. Freund occurred

on July 15, 2014, in Spokane, WA. AR 35-70. On January 9, 2015, the ALJ issued

a decision finding Mr. Utz ineligible for disability benefits. AR 12-24. The

Appeals Council denied Mr. Utz's request for review on April 29, 2016, AR 1-3,

making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Utz timely filed the present action challenging the denial of benefits, on

June 7, 2016. ECF No. 3. Accordingly, Mr. Utz's claims are properly before this

Court pursuant to 42 U.S.C. § 405(g).

## II.     Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT ~ 3**

do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 &

416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are

required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe

impairments "meets or equals" one of the listed impairments acknowledged by the

Commissioner to be sufficiently severe as to preclude substantial gainful activity.

20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or

equals one of the listed impairments, the claimant is *per se* disabled and qualifies

for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the

fourth step.

Step four examines whether the claimant's residual functional capacity

enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) &

416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is

not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is

able to perform other work in the national economy, taking into account the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4**

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

1    *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

2    F.2d 498, 501 (9th Cir. 1989)).

3    In reviewing a denial of benefits, a district court may not substitute its

4    judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

5    1992). If the evidence in the record "is susceptible to more than one rational

6    interpretation, [the court] must uphold the ALJ's findings if they are supported by

7    inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

8    1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

9    2002) (if the "evidence is susceptible to more than one rational interpretation, one

10   of which supports the ALJ's decision, the conclusion must be upheld"). Moreover,

11   a district court "may not reverse an ALJ's decision on account of an error that is

12   harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is

13   inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

14   The burden of showing that an error is harmful generally falls upon the party

15   appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

16   ### IV.    Statement of Facts

17   The facts of the case are set forth in detail in the transcript of proceedings,

18   and only briefly summarized here.  Mr. Utz was 35 years old at the alleged date of

19   onset. AR 22, 71, 79, 200, 206. He has at least a high school education and is able

20   to communicate in English. AR 22, 238-40, 409, 419. The ALJ found Mr. Utz to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

suffer from degenerative disc disease of the cervical spine; degenerative disc

disease of the lumbar spine with protrusion without nerve compression; depressive

disorder; and alcohol, marijuana, and methamphetamine dependence. AR 14. Mr.

Utz previously worked as a maintenance worker, carpenter, construction worker,

janitor, cook, bartender, stock clerk, painter, rig operator, and service station

attendant. AR 22, 257-64, 284. He has a history of alcohol, marijuana, and

methamphetamine use. AR 14, 19-21, 49-50, 52-53, 425, 443, 453.

## V.    The ALJ's Findings

The ALJ determined that Mr. Utz was not under a disability within the

meaning of the Act from June 28, 2012, his alleged date of onset. AR 24.

**At step one**, the ALJ found that Mr. Utz had not engaged in substantial

gainful activity since June 28, 2012 (citing 20 C.F.R. §§ 404.1571 *et seq.* &

416.971 *et seq.*). AR 14.

**At step two**, the ALJ found Mr. Utz had the following severe impairments:

degenerative disc disease of the cervical spine; degenerative disc disease of the

lumbar spine with protrusion without nerve compression; depressive disorder; and

alcohol, marijuana, and methamphetamine dependence (citing 20 C.F.R. §§

404.1520(c) & 416.920(c)). AR 14.

At **step three**, the ALJ found that Mr. Utz did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 15-16.

At **step four**, the ALJ found Mr. Utz had the residual functional capacity to perform light work with the following modifications: he is able to lift up to 15 pounds occasionally and up to 10 pounds frequently; he is able to sit for up to six hours in an 8-hour day and for one hour uninterrupted each time; he is able to stand/walk for up to 30 minutes at one time for a total of four hours in an 8-hour workday; he is able to operate foot controls occasionally with the right foot and frequently with the left foot; he needs to avoid climbing ladders, ropes, and scaffolds, but he can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; he needs to avoid unprotected heights and moving mechanical parts; he can occasionally operate a motor vehicle and be exposed to vibrations; he can have frequent exposure to humidity, extreme temperatures, and fumes, dusts, gases, and other pulmonary irritants; he is able to perform simple, routine, and repetitive tasks; he can have occasional interaction with co-workers; and he can tolerate occasional changes in the work setting. AR 16-22.

The ALJ determined that Mr. Utz is unable to perform his past relevant work. AR 22.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

At **step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. AR 23-24.

## VI.    Issues for Review

Mr. Utz argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) failing to conduct a proper drug and alcohol analysis; (2) improperly rejecting the opinion of Robert G. Kemp, MD; (3) improperly discrediting Mr. Utz's subjective complaint testimony; and (4) failing to identify jobs, available in significant numbers, that Mr. Utz could perform despite his functional limitations.

## VII.    Discussion

### A. The ALJ Did Not Err in Not Conducting a Drug and Alcohol Analysis.

A claimant will not be deemed "disabled" if alcoholism or drug addiction is a contributing factor material to the Commissioner's determination of disability. 42 U.S.C. § 423(d)(2)(C). In determining whether a claimant's alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is whether an individual would still be found disabled if he or she stopped using alcohol or drugs. 20 C.F.R. § 404.1535(b)(1); *Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). However, the materiality of alcoholism or drug addiction only becomes an issue if there is an

1  initial finding that the claimant is disabled, considering all of the impairments,

2  including those caused by alcoholism and drug use. *Bustamante v. Massanari*, 262

3  F.3d 949, 955 (9th Cir. 2001) ("an ALJ must first conduct the five-step inquiry

4  without separating out the impact of alcoholism or drug addiction…If the ALJ

5  finds that the claimant is not disabled under the five-step inquiry, then the claimant

6  is not entitled to benefits and there is no need to proceed with the analysis under 20

7  C.F.R. §§ 404.1535 or 416.935.").

8      Mr. Utz contends that the ALJ erred by rejecting his impairments caused by

9  drug and alcohol use without first proceeding through the five-step inquiry and

10 then conducting a drug and alcohol analysis. However, Mr. Utz misunderstands the

11 ALJ's decision. The ALJ found Mr. Utz was not disabled considering all his

12 impairments, including those caused or made worse due to drug and alcohol use.

13 AR 16, 21. The ALJ assessed Mr. Utz's RFC "include[ing] the limitations *with*

14 substance abuse." AR 21 (emphasis added); *see also* AR 529-31.

15     The ALJ found Mr. Utz was dependent on alcohol, marijuana, and

16 methamphetamine during the period at issue, but that this drug and alcohol use,

17 combined with Mr. Utz's other impairments, did not make him disabled. *See* AR

18 14, 16, 21, 24. Thus, the ALJ was not required to conduct a drug and alcohol

19 analysis after the five-step sequential evaluation process to determine the

20 materiality of Mr. Utz's drug and alcohol use. *Bustamante*, 262 F.3d at 955.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

1    **B. The ALJ Properly Weighed the Medical Opinion Evidence.**

2        **1. Legal Standard.**

3        The Ninth Circuit has distinguished between three classes of medical

4    providers in defining the weight to be given to their opinions: (1) treating

5    providers, those who actually treat the claimant; (2) examining providers, those

6    who examine but do not treat the claimant; and (3) non-examining providers, those

7    who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th

8    Cir. 1996) (as amended).

9        A treating provider's opinion is given the most weight, followed by an

10   examining provider, and finally a non-examining provider. *Id*. at 830-31. In the

11   absence of a contrary opinion, a treating or examining provider's opinion may not

12   be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a

13   treating or examining provider's opinion is contradicted, it may only be discounted

14   for "specific and legitimate reasons that are supported by substantial evidence in

15   the record." *Id*. at 830-31.

16       The ALJ may meet the specific and legitimate standard by "setting out a

17   detailed and thorough summary of the facts and conflicting clinical evidence,

18   stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

19   F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating

20   provider's opinion on a psychological impairment, the ALJ must offer more than

his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2.  Dr. Kemp.

Dr. Robert G. Kemp, MD, was a treating doctor. Dr. Kemp treated Mr. Utz twice, once in July 2012 for back pain and once in August 2012 for neck pain. AR 334-35, 341. In July 2012, Dr. Kemp found Mr. Utz to have tender on palpation lumbar area, extremely positive leg raise, and very tight hamstrings; however, he also found Mr. Utz's strength and reflexes to be intact. AR 334. Dr. Kemp stated he could not offer much for the back pain other than to suggest an MRI to delineate the process and he thought Mr. Utz could have a surgical back condition. He also recommended Mr. Utz apply for Social Security benefits to "see if he can obtain at least some temporary disability." AR 334-35. Dr. Kemp noted Mr. Utz's statement in July 2012 that had been unable to work in construction for the past two months due to severe back pain. AR 20, 334. In August 2012, Dr. Kemp noted Mr. Utz's statement that, "[h]is occupation previously was as a carpenter but he simply cannot do those duties due to his back pain." AR 20, 341. While the ALJ did not completely discount Dr. Kemp's brief opinions, they were afforded little weight. AR 20.

The ALJ noted that the statements in the report that Mr. Utz cannot perform his previous work as a carpenter are based on Mr. Utz's subjective reports;

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

1   statements with which she agrees. AR 20, 334, 341. "An ALJ may reject a treating

2   physician's opinion if it is based 'to a large extent' on a claimant's self-reports that

3   have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d

4   1035, 1041 (9th Cir. 2008). Additionally, where a medical opinion is consistent

5   with the ALJ's decision, the Court cannot find error. *Turner v. Comm'r of Soc.*

6   *Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). The ALJ noted Mr. Utz's severe

7   back impairments and limited him to light work. AR 14, 16. Accordingly, the ALJ

8   agreed with the subjective complaints that Mr. Utz could not return to his prior

9   work as a carpenter. AR 20, 22. Thus, there was no error in the ALJ's assessment

10   of this portion of Dr. Kemp's opinion.

11       Additionally, Dr. Kemp's opinion that Mr. Utz should file for Social

12   Security benefits, is again based on Mr. Utz's subjective statements that he could

13   not do his previous work as a carpenter, and not objective medical evidence. AR

14   20. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief,

15   conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*,

16   427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Kemp's notes are remarkably brief and

17   provide little objective information regarding Mr. Utz's condition. As the ALJ

18   noted, Dr. Kemp opined that Mr. Utz should apply for disability benefits during

19   Mr. Utz's first visit, before Dr. Kemp had the opportunity to review any objective

20   evidence. AR 20, 334-35. The evidence as of the visit did not objectively

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

1   demonstrate severe impairments; an X-ray taken shortly before this examination

2   had shown no bony abnormality. AR 20, 309. Dr. Kemp recommended an MRI,

3   which he suspected might reveal a "surgical back condition." AR 20, 334.

4   However, when the MRI occurred, it did not show any definitive surgical

5   problems. AR 20, 416, 423. Although the treatment notes showed tight hamstrings

6   and positive leg raise, these findings were taken into account and do not prove that

7   Mr. Utz's condition precluded light work, as assessed in the residual functional

8   capacity. AR 16, 17.

9       In assigning less weight to Dr. Kemp's opinion, the ALJ supported the

10   determination with specific and legitimate reasons supported by substantial

11   evidence in the record. Additionally, the ALJ clearly explained that Dr. Kemp's

12   opinion was based on Mr. Utz's subjective statements and minimal objective

13   evidence, and on this basis, the ALJ reasonably gave this opinion little weight.

14   Thus, the ALJ did not err in her consideration of Dr. Kemp's opinion.

15   **C. The ALJ Properly Discounted Mr. Utz's Credibility.**

16       An ALJ engages in a two-step analysis to determine whether a claimant's

17   testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

18   F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

19   medical evidence of an underlying impairment or impairments that could

20   reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Utz alleges; however, the ALJ determined that Mr. Utz's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 17. In assessing an RFC that is mostly consistent with Mr. Utz's testimony and corroborated by the medical evidence in the record, the ALJ noted multiple inconsistencies between Mr. Utz's statements and the evidence of record. AR 17-20.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

1    The ALJ noted a lack of evidence that Mr. Utz's physical condition was

2    worsening, as he alleged at the hearing. AR 17. A claimant's exaggeration and

3    inconsistent statements are specific and convincing reasons to discount his or her

4    credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

5    Contrary to Mr. Utz's assertion, physical examinations did not show Mr.

6    Utz's condition dramatically worsened in the two years leading up to the hearing.

7    AR 54-55. Rather, four months before the hearing, Mr. Utz reported no cervical or

8    lumbar tenderness, normal curvature in the spine, normal extension in the spine,

9    and normal mobility. AR 19, 420. He was also noted to have "three out of three"

10    Waddell's signs, which indicates possible symptom magnification. AR 420. While

11    an orthopedic consultation with William Osebold, M.D., a month later showed Mr.

12    Utz had lower back discomfort, rounded shoulders, and some spinal problems, Dr.

13    Osebold recommended only physical therapy and home exercise. AR 19, 439-40.

14    The ALJ found no evidence to corroborate Mr. Utz's allegations that he could

15    stand, walk, and sit for less time in 2014 than he could in 2012. AR 17-18, 54-55.

16    Treatment notes show that Mr. Utz complained of his back and spine issues in

17    2012, and that there was no increase in the magnitude or frequency of his

18    complaints in 2014. AR 341, 348, 361, 372, 376, 380, 400, 423, 439, 534, 535.

19    Additionally, Mr. Utz received only conservative treatment despite

20    significant pain complaints. AR 18. Conservative treatment can be "sufficient to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

1  discount a claimant's testimony regarding [the] severity of an impairment." *Parra*

2  *v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007). Doctors who treated Mr. Utz

3  after his MRIs recommended Mr. Utz taper his medications and continue

4  stretching and walking. AR 365. Physician's assistant William Bomberger, PA-C,

5  said Mr. Utz's lumbar spine did not show any definitive surgical problems. AR 19,

6  416. Benjamin Moses, PA-C noted decreased extension of the neck and only mild

7  decreased flexion on his back, and later counseled using alternating ice/heat when

8  needed and using proper lifting technique. AR 19, 405, 414. Dr. Osebold

9  performed an orthopedic consultation after the MRIs and recommended physical

10  therapy and home exercise. AR 19, 438-40.

11       The ALJ also found Mr. Utz less than fully credible based on evidence that

12  Mr. Utz minimized the extent of his substance abuse. AR 19-20. Untruthfulness

13  about substance abuse is a clear and convincing reason to reject a claimant's

14  testimony. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Mr. Utz's

15  statements about drug and alcohol abuse are inconsistent. In October 2011 and

16  November 2012 he denied alcohol and drug abuse. AR 313, 366. In April 2014, he

17  stated, "I don't drink alcohol." AR 467. However, in June 2014 he reported he

18  drank just the weekend prior, and his last heavy use was 2012. AR 443. At the July

19  2014 hearing, he indicated he had been using alcohol heavily in 2012, and that he

20  still used alcohol every few months. AR 53.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17**

His statements at the hearing about his methamphetamine use were also inconsistent with the medical record. At the July 2014 hearing, he stated that he had only used methamphetamines once during the period at issue. AR 49-50, 52-53. However, his medical file indicated his methamphetamine usage was more regular. In early January 2014, he reported currently using methamphetamine and he stated that he "has experienced 'black out' moments when he drinks alcohol and does meth, and reported he last took meth 'about two weeks ago.'" AR 416, 424-25. Mr. Utz used meth again about a week after that medical report. AR 453. Mr. Utz also stated that he uses less marijuana at the advice of his doctors, but in May and June of 2014 he reported using marijuana daily use of Marijuana, three to four times a day and two to three joints per day. AR 19-20, 443,453.

The Court does not find the ALJ erred when assessing Mr. Utz's credibility because his reported disabling impairments are inconsistent with the record as a whole, and the ALJ properly determined he has minimized the extent of his drug and alcohol use.

### D. The ALJ Properly Identified Jobs Mr. Utz Could Perform and Did Not Err in Her Step Five Analysis.

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

1    404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

2    burden, the Commissioner must establish that (1) the claimant is capable of

3    performing other work; and (2) such work exists in "significant numbers in the

4    national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

5    676 F.3d 1203, 1206 (9th Cir. 2012).  If the limitations are non-exertional and not

6    covered by the grids, a vocational expert is required to identify jobs that match the

7    abilities of the claimant, given [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428,

8    1432 (9th Cir. 1995).

9         Mr. Utz contends that the ALJ failed to identify jobs, available in significant

10   numbers, that Mr. Utz could perform despite his functional limitations.

11   Specifically, Mr. Utz briefly states that the hypothetical provided to the vocational

12   expert is incomplete because it fails to take into account the moderate mental

13   limitations assessed by Dr. Kent Layton, Ph.D., and that the vocational expert

14   failed to show how the identified jobs would allow for a sit/stand option.

15        However, the RFC assessed by the ALJ and the hypothetical submitted to

16   the vocational expert take into account the limitations Dr. Layton provided. AR 16,

17   292. Dr. Layton identified only moderate limitations in understanding and

18   remembering simple instructions, and he believed Mr. Utz had only mild

19   limitations carrying out simple instructions. AR 529. Similarly, Dr. Layton

20   identified moderate difficulties with more complex instructions, interacting with

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

1  co-workers and changes in routine. AR 530. These limitations are in consensus

2  with the ALJ's findings and assessed limitations. The ALJ limited Mr. Utz to

3  "simple, routine, and repetitive tasks," with "occasional interaction with co-

4  workers," and "occasional changes in the work setting." AR 16, 23, 292.

5      Furthermore, the vocational expert testimony provided substantial evidence

6  to support the ALJ's finding. See *Bayliss*, 427 F.3d at 1218 ("An ALJ may take

7  administrative notice of any reliable job information, including information

8  provided by a VE."). Here, the vocational expert opined that the jobs identified

9  would "allow for sitting and standing at the discretion of the worker," and he based

10  his opinion on his "experience of over 30 years as a vocational rehabilitation

11  counselor/disability analyst and from resources developed by professionals in [his]

12  industry." AR 23, 285.

13      Because the moderate mental limitations assessed by Dr. Layton were taken

14  into account by the ALJ and the vocational expert in determining whether jobs

15  exist in sufficient numbers in the national economy that Mr. Utz can perform

16  despite his limitations, the hypothetical was complete. Additionally, the vocational

17  expert identified jobs that match the abilities of Mr. Utz, given his limitations,

18  including identifying jobs that would allow for a sit/stand option at the discretion

19  of the worker. Thus, the Court finds the ALJ met her step five burden and did not

20  err in her analysis.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3. **Judgment shall be entered in favor of Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 15th day of February, 2017.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge